1

2

3               **UNITED STATES DISTRICT COURT**

4              **NORTHERN DISTRICT OF CALIFORNIA**

5                    **SAN JOSE DIVISION**

6

7    NOSSK, INC.,                        Case No.  21-cv-08914-BLF

8                 Plaintiff,

9         v.                            **ORDER DENYING DEFENDANT**
                                        **FITNESS ANYWHERE LLC'S**
10   FITNESS ANYWHERE LLC, et al.,      **MOTION FOR PRELIMINARY**
                                        **INJUNCTION**
11                Defendants.
                                        [Re:  ECF No. 21]

12

13          This is a declaratory judgment action brought by Plaintiff NOSSK, Inc. ("NOSSK") seeking

14   a declaration that NOSSK's exercise equipment products do not infringe Defendant Fitness

15   Anywhere LLC d.b.a TRX's ("TRX") U.S. Patent No. 8,083,653 (the "'653 Patent"), and that the

16   '653 Patent is invalid.  TRX, by counterclaim, asserts infringement of three of its patents—the '653

17   Patent; U.S. Patent No. 7,806,814 (the "'814 Patent"); and U.S. Design Patent No. D831,764 (the

18   "'764 Patent")—among other claims.  Before the Court is TRX's motion for preliminary injunction

19   to prevent NOSSK from manufacturing, advertising, making, selling, and distributing products that

20   TRX alleges infringe the '653 Patent; the '814 Patent; and the '764 Patent.  TRX also seeks an

21   injunction requiring NOSSK and third-party defendants Wolfgang Ott, Nadia Ott, and WONODA

22   Inc. ("WONODA") to return various assets to the bankrupt entity WOSS Enterprises LLC

23   ("WOSS"), including products and a trademark that TRX alleges NOSSK converted from WOSS.

24   TRX won a $13 million judgment against WOSS following a jury verdict in a prior patent

25   infringement action before this Court, and TRX remains WOSS's primary creditor.

26          Based on the below reasoning, the Court DENIES TRX's motion for preliminary injunction.

27

28

## I.    BACKGROUND

### A.    Prior Litigation

On November 29, 2021, the Court found that the above-captioned case is related to a case previously before this Court:  *Fitness Anywhere LLC v. WOSS Enterprises LLC*, No. 5:14–cv–01725–BLF (N.D. Cal.) (the "WOSS Action").  *See* Related Case Order, ECF No. 15.

TRX filed the WOSS Action on April 14, 2014, alleging that WOSS's products infringed the '814 Patent and U.S. Patent Nos. 7,044,896 (the "'896 Patent") and 8,043,197 (the "'197 Patent") along with claims of (1) trademark infringement; (2) unfair competition under federal and California state law; and (3) tortious interference with prospective economic relationships.  *See* WOSS Action, ECF No. 1.  The Court issued a claim construction order on November 19, 2015. *See* WOSS Action, ECF No. 97.  On August 23, 2016, the Court granted summary judgment in favor of WOSS as to the § 103 invalidity of the '814 Patent and non-infringement of the '197 Patent. *See* WOSS Action, ECF No. 149.

The WOSS Action went to trial in March 2017, including based on TRX's infringement claim of U.S. Patent No. 7,044,896 (the "'896 Patent") as to the following WOSS products:  (1) the Titan 1 1/2 in. Wide Strap; (2) the 3000 Equalizer; (3) the Military Gym Style; (4) the Military 1 in. Trainer; (5) the Military 1 1/2 in. Trainer; and (6) the WOSS XT.  *See* WOSS Action, ECF No. 174 at 3.  Following trial, the jury returned a verdict that WOSS infringed the '896 Patent.  *See* WOSS Action, ECF No. 235.

Following the jury verdict, WOSS filed notice that it had filed for Chapter 7 bankruptcy. *See* WOSS Action, ECF No. 253.  Further, on September 18, 2018, TRX filed a motion for reconsideration of the Court's summary judgment order finding the '814 Patent invalid.  *See* WOSS Action, ECF No. 281.  The Court granted the unopposed motion, thereby reversing its judgment of invalidity regarding the '814 Patent.  *See* WOSS Action, ECF No. 293.  On November 20, 2018, the Court entered a permanent injunction against WOSS enjoining it from making, using, offering to sell, or selling within the United States any of the six products the jury found infringing of the '896 Patent.  *See* WOSS Action, ECF No. 296.  The Court issued a final judgment in the amount of $13,002,462.70 against WOSS.  *See* WOSS Action, ECF No. 305.

United States District Court
Northern District of California

### B.     Factual Background

TRX is a Delaware corporation with its principal place of business in California. *See* Amended Answer, ECF No. 39 ¶ 95. It sells suspension trainer exercise devices. *See id.* ¶ 170. NOSSK and WONODA are California corporations with their principal place of business in California. *See id.* ¶¶ 96–97. Wolfgang Ott is a California resident who is CEO and co-owner of NOSSK, CFO of WONODA, and CEO and co-owner of WOSS. *See id.* ¶ 99. Nadia Ott, Wolfgang's wife, is a California resident who is director and co-owner of NOSSK, CEO and director of WONODA, and co-owner of WOSS. *See id.* ¶ 100. NOSSK and WONODA sell exercise devices, including through Amazon.com. *See id.* ¶¶ 10, 119.

On November 17, 2021, NOSSK filed the present declaratory judgment action against TRX, seeking a declaration by the Court that NOSSK's products do not infringe the '653 Patent and that the '653 Patent is invalid. *See* Complaint, ECF No. 1. In its answer, TRX asserts counterclaims for infringement of the '814 Patent by NOSSK's Twin Pro, Home, RT-17, and Cyclone exercise device products; infringement of the '764 Patent by the Twin Pro product; and infringement of the '653 Patent by the Home product. *See* Amended Answer, ECF No. 39 ¶¶ 146–68. TRX also asserts trademark infringement based on NOSSK's use of the marks "Gym," "Pro," and "Home." *See id.* ¶¶ 169–82. Further, as the largest creditor of WOSS, TRX asserts claims against NOSSK and third-parties Wolfgang Ott, Nadia Ott, and WONODA, arguing that they stole assets from the bankrupt WOSS, including the WOSS trademark U.S. Reg. No. 4,656,299 (the "'299 Trademark" or the "FlexEx Mark"); various completed WOSS products held in storage at the time of the bankruptcy; the website www.flexex.com; and the NOSSK Home, RT-17, and Cyclone products. *See id.* ¶¶ 183–226. TRX asserts claims of piercing the corporate veil; successor liability; unfair competition; tortious interference; and fraudulent conveyance. *See id.*

TRX brings a motion for preliminary injunction, seeking to enjoin NOSSK from manufacturing, advertising, making, selling, or distributing the Twin Pro, Home, RT-17, and Cyclone products. *See* Proposed Order, ECF No. 21-2 at 7. Further, TRX seeks an injunction requiring NOSSK to provide all tangible and intangible assets linked with those products to the trustee of the WOSS bankruptcy, along with an accounting of the sales of those products. *See id.*

United States District Court
Northern District of California

1  Additionally, TRX seeks an injunction requiring WONODA to give control of the website
2  www.flexex.com to the trustee of the WOSS bankruptcy; to assign the FlexEx Mark to the trustee;
3  and to provide the trustee with all tangible and intangible assets linked with the FlexEx product.  *See*
4  *id.*  NOSSK opposes, arguing that TRX is unable to show likelihood of success on the merits or
5  irreparable harm as to any of its claims, and that it fails to show the balance of the equities or the
6  public interest favors the injunction TRX seeks.  *See* Opposition, ECF No. 37.

7  ## II.  LEGAL STANDARD

8  A party may obtain a preliminary injunction by showing that (1) it is "likely to succeed on
9  the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) the
10  "balance of equities tips in [its] favor," and (4) "an injunction is in the public interest."  *Winter v.*
11  *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The burden is always on the movant to show
12  that it is likely to succeed on the merits.  *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1398
13  (Fed. Cir. 2022).  To obtain a preliminary injunction, a movant must make a "clear showing" that it
14  is entitled to the "extraordinary remedy" of a preliminary injunction.  *See Winter*, 555 U.S. at 22.

15  Although Ninth Circuit law applies to preliminary injunctions, dominant effect is given to
16  Federal Circuit precedent insofar as it reflects considerations specific to patent issues.  *See Macom*
17  *Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1328 (Fed. Cir. 2018) (quoting
18  *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998)).  Whether a
19  patentee has shown a likelihood of success on the merits is one such area where Federal Circuit law
20  applies, as it is a question specific to patent law.  *See Revision Mil., Inc. v. Balboa Mfg. Co.*, 700
21  F.3d 524, 526 (Fed. Cir. 2012).

22  Since TRX seeks to compel NOSSK to act—*i.e.*, by transferring various assets to the
23  bankruptcy trustee—prior to the entry of a final judgment, TRX seeks a mandatory injunction.  A
24  mandatory injunction is "one that goes beyond simply maintaining the status quo and orders the
25  responsible party to take action pending the determination of the case on its merits."  *See Doe v.*
26  *Snyder*, 28 F.4th 103, 111 (9th Cir. 2022).  "The standard for issuing a mandatory preliminary
27  injunction is high."  *Id.*  "In general, mandatory injunctions are not granted unless extreme or very
28  serious damage will result and are not issued in doubtful cases or where the injury complained of is

capable of compensation in damages." *Id.* (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)) (internal quotations omitted).

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits

When the patentee is the moving party "at the preliminary injunction stage, because of the extraordinary nature of the relief, the patentee carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." *Nutrition 21 v. U.S.*, 930 F.2d 867, 869 (Fed. Cir. 1991) (emphasis omitted).   This requires the patentee to "clearly show[]" that his or her patent is valid and infringed. *See Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985).   If the alleged infringer "raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001).

The parties agree that TRX must "first prove that [it] is 'likely to succeed' on the merits" to prevail on its motion for preliminary injunction. *See* Motion, ECF No. 21 at 4 (quoting *Winter*, 555 U.S. at 20); Opposition, ECF No. 37 at 7 ("To the extent TRX cannot prove the likelihood of infringement, or the Opposing Parties demonstrate that the patent at issue is likely invalid or unenforceable, that part of TRX's motion must be denied.").   The parties dispute whether TRX can show likelihood of success on the merits regarding its claims of (1) infringement of the '653, '814, and '764 Patents and (2) conversion of WOSS assets.   The Court considers each issue in turn.

#### 1.    Infringement of '653 Patent by Home Product

TRX argues that it can show a likelihood of success on the merits as to NOSSK's Home Product's infringement of claim 1 of the '653 Patent. *See* Motion, ECF No. 21 at 6.

The '653 Patent, titled "Exercise Device Having a Door Anchor," was filed on November 30, 2007, with a provisional application filed on September 17, 2007. *See* '653 Patent at 1.   The '653 Patent was granted on December 27, 2011. *See id.*   Claim 1 of the '653 Patent provides the following:

1.  An exercise device for mounting between a door and a door jamb of a closed door, said exercise device comprising:

an anchor having a first portion, an enlarged portion, and an elongate portion that extends between said first portion and said enlarged portion, and

a pair of portions, where each of the pair of portions is inelastic and has a length that extends from a corresponding grip to an end, and where each of said ends is fixedly connected to said first portion,

where, when said anchor is mounted to the closed door:

said elongated portion extends from a first side of the closed door to a second side of the closed door,

said enlarged portion is not passable through the closed door, and

said first portion extends away from the second side of said door by a distance.

An image of the Home product, which consists of a single strap with a door anchor sown in the middle and grips on the ends, is shown below:



TRX provides a claim chart indicating how it argues the Home Product satisfies each limitation of claim 1 of the '653 Patent.  *See* Villeneuve Decl., ECF No. 21-1, Ex. B.  Specifically, TRX argues that the "anchor" is the "built-in door anchor" labeled in the below image; the "enlarged portion" is the metal tube inside the door strap within the door anchor; the "first portion," "elongate

1   portion," and "pair of portions" are different subsections of the single, continuous strap; and the

2   "grip[s]" are shown at the bottom of the below image.  *See id.*

3       In response, NOSSK argues that the Home Product does not infringe two limitations of

4   claim 1 of the '653 Patent:  (a) "a pair of portions, where each of the pair of portions is inelastic and

5   has a length that extends from a corresponding grip to an end, and where each of said ends is fixedly

6   connected to said first portion" and (b) "when said anchor is mounted to the closed door: said

7   elongated portion extends from a first side of the closed door to a second side of the closed door . . .

8   and said first portion extends away from the second side of said door by a distance."  *See* Opposition,

9   ECF No. 37 at 12–14.  Further, NOSSK argues that claim 1 of the '653 Patent is invalid in light of

10  the prior art.  *See id.* at 14.

11      The Court first considers whether TRX has shown likelihood of success on whether the

12  Home product infringes the following limitation:  "a pair of portions, where each of the pair of

13  portions is inelastic and has a length that extends from a corresponding grip to an end, and where

14  each of said ends is fixedly connected to said first portion."  TRX argues that the single, continuous

15  strap of the Home Product can be subdivided into a "pair of portions," *i.e.*, the "blue vertical

16  portions" in the below image:



United States District Court
Northern District of California

1    Villeneuve Decl., ECF No. 21-1, Ex. B at 2–3.

2          In response, NOSSK raises a prosecution history disclaimer argument.  *See* Opposition,

3    ECF No. 37 at 13.  NOSSK argues that during prosecution of the '653 Patent, TRX disclaimed an

4    embodiment involving a single strap by amending its claims and making arguments to avoid the

5    prior art reference U.S. Patent No. 7,090,622 ("Hetrick Reference").  *See id.*; Mathiowetz Decl.,

6    ECF No. 37-1 ¶¶ 6(a)–(d).  For example, NOSSK points to TRX's argument during prosecution that

7    "there is no teaching or suggestion in [the Hetrick Reference] of more than one elongated member

8    having grips, [or] of having the grips on different elongated members."  Opposition, ECF No. 37

9    at 13 (citing Mathiowetz Decl., Ex. 5 at 36).

10         On reply, TRX seeks to incorporate by reference the arguments it made in response to

11   NOSSK's disclaimer argument in the briefing on NOSSK's motion for preliminary injunction.[1]  *See*

12   Reply, ECF No. 43 at 6.  Otherwise, TRX argues that NOSSK's noninfringement argument is

13   premised on the mistaken notion that two portions cannot be part of a single strap.  *See id.*  NOSSK

14   argues that NOSSK's premise is contradicted by the following dictionary definition of "portion":

15   "a part of any whole, either separated from or integrated with it."  *See id.* (citing Villeneuve Reply

16   Decl., Ex. A1, Attachment A1-2).

17         The Court finds that TRX has met its burden for showing likelihood of success on the merits

18   of its infringement argument for the "pair of portions" limitation.  In response to NOSSK's

19   disclaimer evidence, *see* Mathiowetz Decl., ECF No. 37-1 ¶¶ 6(a)–(d), TRX presents evidence that

20   during prosecution of the '653 Patent, TRX disclaimed an embodiment with a slidable anchor—not

21   a single-strap embodiment.  *See* TRX Opposition to NOSSK Motion for Preliminary Injunction

22   ("TRX Opposition"), ECF No. 36 at 4–6.  Specifically, TRX argues that a statement by the examiner

23   late in the '653 prosecution history that "the Applicant has not yet claimed that the attachment to

24   the first portion of the anchor is fixed" would "make no sense" if TRX had disclaimed a continuous

25   strap, since "only the continuous strap can slide."  *See* TRX Opposition, ECF No. 36 at 5–6 (citing

26

27   _____

28   [1] While the Court's Standing Order does not allow incorporation by reference, since NOSSK does
     not object, the Court considers the arguments TRX presents regarding the prosecution disclaimer
     issue in the briefing on NOSSK's motion for preliminary injunction.

Mathiowetz Decl., ECF No. 28-1, Ex. R, '653 Prosecution History at 64).  The Court finds that TRX's evidence is sufficient to undermine NOSSK's disclaimer argument.  *See MIT v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119–20 (Fed. Cir. 2016) ("Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' we have declined to find prosecution disclaimer.") (quoting *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016)).  Since NOSSK's only noninfringement argument for the "pair of portions" limitation is dependent on its prosecution history disclaimer argument, the Court finds that TRX has shown a likelihood of success regarding infringement of this element.

However, TRX has not adequately addressed NOSSK's other noninfringement argument.  NOSSK argues that the Home Product does not infringe the following limitation of claim 1 of the '653 Patent:  "when said  anchor is mounted to the closed door: said elongated portion extends from a first side of the closed door to a second side of the closed door . . . and said first portion extends away from the second side of said door by a distance."  NOSSK argues that in order to read claim 1 of the '653 Patent on the Home Product, both the "elongated portion" of the anchor and the "first portion" of the anchor must be the same element.  *See* Opposition, ECF No. 37 at 14.  TRX does not respond to this argument at all.  Without any evidence to rebut NOSSK's argument, the Court finds that NOSSK has raised a "substantial question" as to whether TRX can prevail in showing infringement of claim 1 of the '653 Patent.  *See Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 373 F.Supp.3d 1288, 1295–96 (N.D. Cal. 2019) ("[N]othing in the specification casts doubt on the claim language, which unambiguously recites separate elements."); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231 (Fed. Cir. 2011).

Accordingly, the Court finds that TRX has failed to show likelihood of success on the merits of its infringement argument for claim 1 of the '653 Patent.  The Court does not reach the parties' other disputes regarding infringement and validity.  *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) ("[A]n accused product or process is not infringing unless it contains each limitation of the claim[.]") (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)).

United States District Court
Northern District of California

### 2.  Infringement of '814 Patent by RT-17 and Cyclone Products

TRX argues that it can show likelihood of success on the merits that NOSSK's RT-17 and Cyclone products infringe claim 6 the '814 Patent.  *See* Motion, ECF No. 37 at 5.

The '814 Patent, titled "Combination Grip for an Exercise Drive," was filed on November 6, 2006, with a provisional application filed on November 7, 2005 and a chain of continuation-in-part applications extending back to April 9, 2003.  *See* '814 Patent at 1.  The '814 Patent was granted on October 5, 2010.  *See id.*  Claim 6 of the '814 Patent provides the following:

> An exercise apparatus comprising:
>
> an inelastic portion having at least one end including a first loop;
>
> a hand grip attached to said first loop; and
>
> a second loop attached to said hand grip,
>
> where said second loop is a continuous loop which passes through said hand grip,
>
> where said hand grip is integrally attached to said at least one end,
>
> where said second loop is integrally attached to said hand grip, and
>
> where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grip, said second loop, or some combination thereof.

The Court construed the '814 Patent during the WOSS Litigation.  *See* WOSS Litigation, ECF No. 97.  The Court construed the following terms relevant to claim 6 of the '814 Patent:

| Term | Construction |
|---|---|
| loop | a length of material made of one or more pieces formed into a ring or closed or partially closed curved section |
| is integrally attached | is not removable |
| continuous loop | a loop made of one or more pieces formed into a closed curved section |

*See* WOSS Litigation, ECF No. 97 at 10.

10

1    An image of the RT-17 Product is shown below on the left and an image of the Cyclone

2    Product is shown below on the right:



See Villeneuve Decl., ECF No. 21-1, Ex. A at 1–2.  Both the RT-17 and the Cyclone Products are

comprised of a rope and two grips separate from the rope.  The separate grips consist of a loop of

rope running through a tube (the hand grip) and a strap (the foot grip) hanging down below the hand

grip.  The grips are attached to the rope by tying the rope to the grip.  The main difference between

the RT-17 and Cyclone products is that the rope of the RT-17 product (above left) runs through a

mounted strap, while the rope of the Cyclone product (above right) runs through a mounted pully.

TRX provides a claim chart demonstrating how the RT-17 and Cyclone products allegedly

infringe each limitation of claim 6 of the '814 Patent.  See Villeneuve Decl., ECF No. 21-1, Ex. A.

TRX's theory is that the "inelastic portion having at least one end including a first loop" of the

RT-17 and Cyclone products is the rope plus the upper part of the grip when tied to the rope.  This

is demonstrated via yellow highlighting on the Cyclone Product below:



*See* Reply, ECF No. 43 at 5.  Otherwise, TRX argues that the horizontal bar is the "hand grip" and the strap hanging down below the horizontal bar is the "second loop."  *See* Villeneuve Decl., ECF No. 21-1, Ex. A at 3–4.  TRX argues that these are "integrally attached" when the RT-17 and Cyclone products are in operation, because the grips are tied to the rope.  *See id.* at 4; Reply, ECF No. 43 at 5–6.  TRX further argues that it makes no difference that the product needs to be assembled—*i.e.*, the knot needs to be tied.  *See* Reply, ECF No. 43 at 5 (citing *Life Techs. Corp. v. Promega Corp.*, 137 S.Ct. 734 (2017)).

In response, NOSSK argues that the RT-17 and Cyclone products do not infringe claim 6 of the '814 Patent.  *See* Opposition, ECF No. 37 at 10–11.  NOSSK points to the Court's construction of the term "integrally attached" in the WOSS Action:  "not removable."  *See id.*  NOSSK argues that since the handles in the RT-17 and Cyclone products are removable—*i.e.*, they can be untied from the rope—the hand grips are not "integrally attached" to the rope.  *See id.* at 10.  NOSSK argues that it does not matter that the handles are attached while in operation as TRX argues, since claim 6 is an apparatus claim, rather than a method claim, so "[t]he hand grips are either 'removable' or 'integrally attached'—not both."  *Id.* at 11.

The Court finds that TRX has failed to show likelihood of success regarding infringement of claim 6 of the '814 Patent by the RT-17 and Cyclone products.  NOSSK provides evidence raising a substantial question as to whether the RT-17 and Cyclone Products infringe claim 6 of the '814

United States District Court
Northern District of California

Patent based on the Court's prior construction of the "integrally attached" term.  *See* Opposition, ECF No. 37 at 10–11.  TRX's arguments in response are unavailing.

TRX misses the mark with its argument that a product can infringe a patent even if it is sold in the form of components that must be combined.  *See* Reply, ECF No. 43 at 5.  While active inducement of an infringing combination of components can constitute patent infringement, TRX still needs to show that the combination satisfies all elements of claim 6 of the '814 Patent, including the "not removable" requirement.  The Court finds that TRX has not adequately done so at this stage.

TRX additionally argues that the "inelastic portion having at least one end including a first loop" in the RT-17 and Cyclone Products is the combination of the rope and the grip loop when tied together.  *See* Reply, ECF No. 43 at 5–6.  However, since the loop can be untied from the rope, there is still a substantial question whether the hand grip is "integrally attached to said at least one end" of the rope.   Accordingly, TRX's "rope plus loop" theory fails to show that NOSSK's noninfringement argument "lacks substantial merit."  *See Amazon.com*, 239 F.3d at 1350–51.

The Court finds that TRX has failed to meet its burden of showing likelihood of success on the merits regarding infringement of the '814 Patent by NOSSK's RT-17 and Cyclone products.  NOSSK also raises an estoppel argument, but since TRX has failed to meet its burden on infringement, the Court does not need to reach any further issues as to the '814 Patent.

### 3.  Infringement of '764 Patent by Twin Pro Product

TRX argues that NOSSK's Twin Pro product infringes the '764 Patent.  The '764 Patent was filed on December 9, 2016 and granted on October 23, 2018.  *See* '764 Patent at 1.  The '764 Patent claims "a flexible strap with a dual stitch pattern."  *See id.*  Front and back views of the claimed design are shown in Figures 2 and 3 of the '764 Patent:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California



**FIG. 2**            **FIG. 3**

TRX provides the following image of the Twin Pro product, which shows the door anchor inside the strap and two lines on the strap above the anchor and one below:



*See* Motion, ECF No. 21 at 4.  TRX argues that there is no functional reason for the placement of the lines on the Twin Pro strap.  *See id.*

In response, NOSSK argues that if the claims are properly construed, then the Twin Pro does

14

not infringe.  NOSSK proposes the following construction:

> [A] first row that starts near a first side of the strap and makes a zig-zag pattern horizontally to the other side, then makes a straight return through approximately the center of the zig-zags, and finishes at the first side with a sti[t]ch that dips slightly below the first stitch toward but not touching the second row of stitches.  The second row mirrors the first row.

*See* Opposition, ECF No. 37 at 7–8.  NOSSK argues that its products have either two or three rows of multiple zig-zag stitches "back and forth across the width of the webbing, along with multiple straight passes across the webbing, resulting in more dense and often wider rows of stitches."  *Id.* at 8.  NOSSK provides the following image of a Twin Pro strap:



Mathiowetz Decl., ECF No. 37-1, Ex. 3.  Further, NOSSK argues that the stitches on the Twin Pro strap are functional, and courts ignore functional aspects when evaluating design patent infringement.  *See* Opposition, ECF No. 37 at 8 (citing *Richardson v. Stanley Works*, 597 F.3d 1288, 1294 (Fed. Cir. 2010)).  NOSSK provides Mr. Ott's declaration as evidence, where he states the following:

> [L]ooking at the stitching pattern on the TWIN PRO Trainer as shown by TRX in its motion papers, the top two rows are used to hold the D-ring and anchor tube in place.  Two rows are used to provide greater stitch strength.  If the anchor tube is to [sic] great in diameter, one row of heavier stitching might be used, but it still serves the function of holding the D-ring and anchor tubes in position.  The third row works with the second row to secure the anchor tube in place.  In other

United States District Court
Northern District of California

> words, this stitching is used strategically to hold components in place.
> . . . Some companies use a single stitch, which can easily fail under
> heavy load.

Wolfgang Ott Decl., ECF No. 37-8 ¶ 16.

The Court finds that TRX has failed to adequately show likelihood of success on the merits of proving that the Twin Pro product infringes the '764 Patent.  NOSSK provides evidence that TRX is seeking to protect functional elements of the design claimed in the '764 Patent.  *See id.*  In response, TRX can only point to a law review article and state, without explanation, that it "dispels" NOSSK's functionality argument.  *See* Reply, ECF No. 43 at 4 (citing "The Demise of the Functionality Doctrine in Design Patent Law," 92 Notre Dame L.Rev. 1471, 1491 (2017)).  TRX fails to address NOSSK's functionality evidence whatsoever.  Vague attorney argument and the unexplained invocation of a single law review article and no case authority is insufficient to show that NOSSK's functionality defense "lacks substantial merit."  *See Blephex*, 24 F.4th at 1399.

Accordingly, TRX has failed to show likelihood of success on the merits as to its claim of infringement of the '764 Patent.  The Court does not reach the parties' arguments regarding validity of the '764 Patent.

### 4.  Conversion

#### a.  FlexEx

TRX seeks an injunction related to WONODA's use of the registered trademark "FlexEx," which TRX alleges WONODA converted from the bankrupt WOSS.  The FlexEx product is an elastic "hand exerciser" device shown below:



*See* Villeneuve Decl., ECF No. 21-1, Ex. 3B at 7.  WOSS is listed as the original owner of U.S. Registered Trademark No. 4,656,299 to the mark "FlexEx" for use with "exercise equipment, namely, elastic hand forearm and finger exerciser[.]"  *See id.*, Ex. 3A (the "FlexEx Mark").  WOSS's May 18, 2017 bankruptcy petition indicates that it has an interest of "$0.00" in the FlexEx Mark, stating that it is "owned by Wolfgang Ott, paid for by Woss."  *See id.*, Ex. 5 at 12.  TRX provides evidence that WOSS sold the FlexEx product through the websites www.woss.com and www.flexex.com.  *See id.*, Exs. 2A–C.

Following WOSS's bankruptcy filing, TRX provides evidence that WONODA opened up an Amazon.com store in 2017 selling FlexEx products under the FlexEx Mark.  *See id.*, Ex. 22.  Further, TRX provides evidence that the www.flexex.com URL was renewed in 2019, even though TRX argues it is WOSS property.  *See* Motion, ECF No. 21 at 3; Villeneuve Decl., ECF No. 21-1, Ex. 4.  Additionally, public filings with the USPTO indicate that WOSS assigned the FlexEx Mark to Mr. Ott on June 17, 2020.  *See* Villeneuve Decl., ECF No. 21-1, Ex. 3B–C.  TRX argues that (1) WONODA's use of the www.flexex.com URL; (2) assignment of the FlexEx Mark from WOSS to Mr. Ott; and (3) WONODA's sale of the FlexEx product without authorization or agreement of the bankruptcy court constitute conversion of WOSS assets.  *See* Motion, ECF No. 21 at 3, 7.

In response, NOSSK provides evidence that Mr. Ott developed the FlexEx product and coined the "FlexEx" term in 2005 before the formation of WOSS.  *See* Nadia Ott Decl., ECF No. 37-12 ¶ 10; *id.*, Exs. 8–10.  Further, NOSSK provides evidence that once WOSS was

United States District Court
Northern District of California

formed, Mr. Ott gave a revocable verbal license for WOSS to use the FlexEx Mark for sales of the FlexEx Product, but WOSS never had ownership of the FlexEx Mark despite having paid the fees for obtaining the trademark.  *See id.* ¶ 10; Wolfgang Ott Decl., ECF No. 37-8 ¶ 7.  NOSSK provides evidence that in 2016, WOSS sold all assets related to the FlexEx product to another entity, WONOSS, Inc. ("WONOSS"), with WOSS able to "continue selling the FlexEx to Amazon" until an Amazon loan was paid off.  *See* Nadia Ott Decl., ECF No. 37-12 ¶ 10; *id.*, Ex. 12; Wolfgang Ott Decl., ECF No. 37-8 ¶ 7.  NOSSK provides evidence that in 2017, Mr. Ott revoked WOSS's license for use of the FlexEx Mark, communicating this to the Trustee of the bankruptcy proceedings in person and again in a letter on December 15, 2017.  *See* Nadia Ott Decl., ECF No. 37-12 ¶ 11; *id.*, Ex. 13; Wolfgang Ott Decl., ECF No. 37-8 ¶ 7.

TRX's assertions about the veritable shell game played by Mr. Ott to move around these assets, if proved, paint a disturbing picture of business shenanigans that would not be condoned by any court.  But at this stage, TRX lacks sufficient evidence to outweigh the story told by NOSSK and the Otts.  The Court finds that NOSSK's evidence raises a substantial question as to whether WONODA converted the FlexEx Mark, the FlexEx product, or the www.flexex.com URL from WOSS.  Regarding the FlexEx Mark, the Court finds that there is a substantial question as to whether WOSS owned the Mark at the time of the bankruptcy.  TRX has failed to show otherwise.  For example, TRX appears to argue that a verbal revocable license is an absurdity that the Court should not recognize.  *See* Reply, ECF No. 43 at 2.  But TRX fails to cite any authority supporting this proposition.

Additionally, TRX points to contradictions between different aspects of NOSSK's evidence: "Mr. Ott gave himself a written conveyance, ignored it, gave himself a verbal license yet asks the Trustee for an assignment."  Reply, ECF No. 43 at 2.  The Court agrees that NOSSK's evidence has unexplained contradictions that may undermine its case moving forward.  For example, Mr. Ott and Ms. Ott state that WOSS never had ownership over the FlexEx Mark.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶ 7; Nadia Ott Decl., ECF No. 37-12 ¶ 10.  But the purchase agreement NOSSK provides, which conveyed all assets related to the FlexEx Product from WOSS to WONOSS in 2016, indicates that "[t]he trademarks and trade names used in carrying on the Corporation are

owned exclusively and validly by the Corporation." Nadia Ott Decl., ECF No. 37-12, Ex. 12 § 7(d). This suggests that WOSS *did* in fact own the FlexEx Mark in 2016, which contradicts NOSSK's other evidence indicating that Mr. Ott was the owner and revoked the license for WOSS to use the FlexEx Mark.

TRX hints at these contradictions in its briefing, but it provides no authority or argument regarding how these contradictions support its likelihood of success on the merits regarding conversion of the FlexEx Mark.  Even if WOSS owned the FlexEx Mark in 2016, it appears that title to the mark transferred to WONOSS, so there is still a question based on NOSSK's evidence whether WOSS owned the mark at the time it filed for bankruptcy.  *See* Nadia Ott Decl., ECF No. 37-12, Ex. 12.  While there are potentially significant deficiencies in NOSSK's evidence, TRX has failed to show why these deficiencies indicate that NOSSK has failed to raise a substantial question regarding the merits of TRX's conversion case as to the FlexEx Mark.  Accordingly, the Court finds that TRX has not met its burden for showing likelihood of success on the merits of its conversion claim as to the FlexEx Mark.

Further, regarding the FlexEx product, the Court finds that NOSSK has raised a substantial question of whether WOSS had any rights to the product itself, since the evidence indicates that it was developed and sold prior to the incorporation of WOSS.  *See* Nadia Ott Decl., ECF No. 37-12 ¶ 10; *id.*, Exs. 8–10..  Additionally, regarding the www.flexex.com URL, NOSSK has raised a substantial question as to whether any conversion from WOSS took place.  NOSSK's evidence indicates that Mr. Ott paid for a license to use the www.flexex.com URL after WOSS's license to that URL had expired.  Nadia Ott Decl., ECF No. 37-12 ¶ 14; *id.*, Ex. 16.  TRX has no response for NOSSK's argument that you cannot "own" a URL—you can only license it.  Accordingly, the Court finds that TRX has failed to show a likelihood of success on the merits as to conversion of the FlexEx product or the www.flexex.com URL.

### b.  Home, Cyclone, and RT-17 Products and Miscellaneous Assets

TRX argues that NOSSK also converted the Home, Cyclone, and RT-17 Products from the bankrupt WOSS, so it seeks an injunction requiring that "all tangible and intangible assets linked with" these products are to be returned to WOSS, "including intellectual property, guidebooks,

products, etc" and a sewing machine NOSSK bought shortly after WOSS's bankruptcy.  *See* Proposed Order, ECF No. 21-2 at 7; Motion, ECF No. 21 at 2.  TRX provides a letter from NOSSK indicating that all WOSS inventory was placed in storage lockers, and access to the lockers and responsibility for payment of storage fees was turned over to the bankruptcy trustee.  *See* Villeneuve Decl., ECF No. 21-1, Ex. 14 at 1–2.  The letter indicates that the trustee failed to pay the storage fees, and on October 24, 2017, the WOSS inventory was auctioned off and Mr. Ott was able to purchase the inventory pursuant to an arm's-length transaction at a fair price.  *See id.* at 2.  TRX argues that such transfer of the WOSS inventory without notice to creditors and the bankruptcy court constitutes conversion of the WOSS assets to NOSSK.  *See* Motion, ECF No. 21 at 7–8.  TRX also points to evidence indicating that the auction transaction was made deceptively—WOSS's bankruptcy petition indicated that it had $4,450 in inventory, but Mr. Ott ultimately paid $13,500 for the locker contents, *see* Villeneuve Decl., ECF No. 21-1, Ex. 5 at 9, and Mr. Ott (not the bankruptcy trustee) rented the lockers, Nadia Ott Decl., ECF No. 37-12 ¶ 9.

TRX argues that NOSSK took the WOSS inventory, rebranded it, and sold it as NOSSK products.  *See* Motion, ECF No. 21 at 2–3.  TRX argues that NOSSK took the WOSS "Rope Trainer" product and sold it as the NOSSK RT-17 Product—with "RT" standing for "Rope Trainer."  *See id.* at 2–3.  TRX further argues that NOSSK took the WOSS "Tornado" and "Hurricane" products and rebranded them as the NOSSK Cyclone Product.  *See id.* at 3.  Additionally, TRX argues that NOSSK took the WOSS "Tube Trainer" product and rebranded it as the NOSSK Home Product. *See id.*  TRX provides as evidence (1) the similarities between the WOSS and NOSSK product names; (2) a letter showing side-by-side comparisons of the (a) WOSS "Tornado" and "Hurricane" products and the NOSSK Cyclone Product and (b) WOSS "Tube Trainer" product and the NOSSK Home Product, *see* Villeneuve Decl., ECF No. 21-1, Ex. 17; and (3) similarities in language of WOSS and NOSSK copyrighted product guides, *see id.*, Ex. 19.

In response, NOSSK presents evidence that Mr. Ott acquired the WOSS storage locker contents via an arm's-length transactions in a public auction and kept the bankruptcy trustee informed.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶¶ 12–14; Nadia Ott Decl., ECF No. 37-12 ¶¶ 6–9.  Other NOSSK property, like the sewing machine, was purchased by Mr. Ott personally and

United States District Court
Northern District of California

loaned to NOSSK.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶ 11.  NOSSK presents evidence that it did not use any of the WOSS inventory for manufacturing the NOSSK products—instead, NOSSK's products were made with newly purchased parts and materials.  *See* Nadia Ott Decl., ECF No. 37-12 ¶ 16.  NOSSK presents evidence that the WOSS Rope Trainer and Tube Trainer products were developed prior to WOSS being incorporated, and they were not assigned or otherwise transferred to WOSS.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶ 9.  Regarding the Home Product, NOSSK presents evidence that there were differences in the design of the NOSSK Home Product and the WOSS Tube Trainer, including different buckles and slider designs.  *See* Nadia Ott Decl., ECF No. 37-12 ¶ 16; *id.*, Ex. 18.  Regarding the Tornado and Hurricane products, Mr. Ott states in his declaration that they may have been developed after WOSS's incorporation.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶ 10.  However, he states that no Tornado or Hurricane products were sold after WOSS's bankruptcy, and the Cyclone product is different from the Tornado and Hurricane products.  *See id.*  Further, NOSSK presents evidence that the product guides were created by Mr. Ott prior to WOSS's incorporation.  *See id.* ¶¶ 9–10.

Regarding the Home, Cyclone, and RT-17 products, the Court finds that NOSSK has raised a substantial question as to whether TRX can show that NOSSK's sales of these products constitutes conversion from the bankrupt WOSS.  NOSSK provides evidence that these products are either different from WOSS products or were designed before WOSS was incorporated, and that they were not assigned or otherwise transferred to WOSS.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶¶ 9–10; Nadia Ott Decl., ECF No. 37-12 ¶ 16.  NOSSK provides similar evidence for the product brochures that TRX cites—the evidence indicates they were created before WOSS was incorporated.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶¶ 9–10.  Further, NOSSK presents evidence that all NOSSK products were made with newly purchased parts and materials.  *See* Nadia Ott Decl., ECF No. 37-12 ¶ 16.  TRX fails to address any of this evidence in its reply.  Without a likelihood of success on the merits that the Home, Cyclone, and RT-17 were converted from WOSS, the Court declines to grant a preliminary injunction preventing NOSSK from "manufacturing, advertising, making, selling, and distributing" these products.  *See* Proposed Order, ECF No. 21-2 at 7.

The remaining question is whether TRX has shown likelihood of success on the merits of its

United States District Court  
Northern District of California

1    conversion claim as to the WOSS products in the two storage lockers purchased by Mr. Ott at a

2    public auction.  The facts here are suggestive of deceit on the part of the Otts, WOSS, and NOSSK.

3    The evidence indicates that WOSS's bankruptcy petition indicated that it had $4,450 in inventory,

4    but Mr. Ott ultimately paid $13,500 for the locker contents—and NOSSK now argues that it had

5    "de minimis value to anyone other than the now bankrupt business."  Opposition, ECF No. 37 at 4;

6    *see* Villeneuve Decl., ECF No. 21-1, Ex. 5 at 9.  Further, the evidence indicates that WOSS only

7    gave the bankruptcy trustee a week's notice that she needed to pay the storage fees.  *See* Nadia Ott

8    Decl., ECF No. 37-12 ¶¶ 6–7.  And the checks from the auction came to Mr. Ott.  *See id.* ¶ 9.

9         However, a suggestion of deceit is not the same as likelihood of success on the merits of a

10    conversion claim.  The Court finds that TRX has failed to make the necessary showing here.

11    NOSSK's evidence raises a substantial question as to whether Mr. Ott's purchase of the storage

12    locker contents was conversion of WOSS assets.  The evidence indicates that WOSS reported

13    inventory on its bankruptcy petition, it handed over access to the storage locker to the bankruptcy

14    trustee, Mr. Ott acquired the assets in an arm's-length public auction, and when the checks came to

15    him, he forwarded them to the bankruptcy trustee.  *See* Wolfgang Ott Decl., ECF No. 37-8 ¶¶ 12–14;

16    Nadia Ott Decl., ECF No. 37-12 ¶¶ 6–9.  Further, NOSSK provides evidence that alleged converted

17    WOSS property like the sewing machine was purchased by Mr. Ott personally.  *See* Wolfgang Ott

18    Decl., ECF No. 37-8 ¶ 11.  Without any case authority and little attorney argument from TRX other

19    than blanket accusations and expressions of "shock" at NOSSK's conduct, the Court finds that TRX

20    has failed to show a likelihood of success on the merits as to its claim of conversion regarding assets

21    of the bankrupt WOSS.

22                                              * * *

23         Based on the above reasoning, the Court finds that TRX has failed to show likelihood of

24    success on the merits as to its claims of infringement regarding (1) the '653 Patent; (2) the '814

25    Patent; or (3) the '764 Patent, or (4) for conversion of any WOSS assets.

26    / / /

27    / / /

28    / / /

United States District Court
Northern District of California

### B.    Remaining *Winter* Factors

Since the Court finds that TRX has failed to meet its burden for showing likelihood of success on the merits on any of its claims, the Court does not need to reach the other factors in the *Winter* analysis.  *See* Motion, ECF No. 21 at 4 ("In order to obtain a preliminary injunction, a [party] must first prove that he is 'likely to succeed' on the merits.") (citing *Winter*, 555 U.S. at 20); *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009).

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that TRX's motion for preliminary injunction is DENIED.


Dated:  April 12, 2022

_____
BETH LABSON FREEMAN
United States District Judge